IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN HARTSEK,<br><br>    Plaintiff,<br><br>  v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant. | 2:24-CV-01505-CCW |

# OPINION

Before the Court are Cross Motions for Summary Judgment filed by Plaintiff John Hartsek and Defendant State Farm Mutual Automobile Insurance Company. ECF Nos. 28, 30. For the reasons set forth below, the Court will grant State Farm's Motion, ECF No. 30, and deny Mr. Hartsek's Motion, ECF No. 28.

## I. Material Facts

This case arises out of a dispute regarding the amount of underinsured motor vehicle coverage ("UIM") Mr. Hartsek is entitled to under an automobile insurance policy he holds from State Farm. The following facts are drawn from the parties' Stipulated Concise Statement of Undisputed Material Facts (SCSOMF), unless otherwise noted. ECF No. 33.

Before July 2019, Mr. Hartsek and his wife insured their three vehicles through an automobile insurance policy issued by State Farm (the "existing policy"). SCOMF ¶ 9. On or about July 11, 2019, Mr. Hartsek made a request to his State Farm agent to "split off" one of those vehicles, a 2017 Chevrolet K1500, from the existing policy and into a new automobile insurance policy (the "new policy"), to be issued to Mr. Hartsek's contracting business. *Id.* ¶ 15. In insurance parlance, this is referred to as a "'split off' transaction." *Id.* ¶ 30. The same day, Mr. Hartsek

signed a form titled "Underinsured Coverage Limits" which stated, "I acknowledge and agree that I have been given the opportunity to purchase Underinsured Motor Vehicle Coverage with limits up to my Liability Coverage limits for bodily injury but instead I select lower limits of $50,000.00 / $100,000.00 in lieu of the higher limits made available to me." *Id.* ¶ 16. The underinsured coverage limits form, which was generated by State Farm proprietary software, listed Hartsek, John J DBA Hartsek Contracting as the named insured. *Id.* ¶¶ 17, 27.

The underinsured coverage limits form included a field titled "Application/Policy number," which listed the policy number for the existing policy, rather than the new policy. *Id.* ¶ 18. The parties agree that this is because, at the time Mr. Hartsek signed the form, the new policy had not yet been issued and thus did not yet have a policy number. *Id.* ¶ 29. There was also no application number associated with the new policy, because it was issued pursuant to a split off transaction rather than a traditional application. *Id.* ¶ 30. Thus, the software that generated the form listed the number associated with the policy the Chevrolet K1500 was being split off from— the existing policy. *Id.* ¶¶ 27–30.

After Mr. Hartsek submitted the signed underinsured coverage limits form, State Farm issued the new policy for the Chevrolet K1500. *Id.* ¶ 19. Sometime thereafter, Mr. Hartsek added a 2020 GMC pick-up truck to the new policy. *Id.* ¶ 6. Subsequently, in April 2022, Mr. Hartsek was sitting in the GMC pick-up truck when he was struck by another vehicle. *Id.* ¶¶ 6–8. Mr. Hartsek suffered extensive injuries from the collision. *Id.* ¶¶ 11–18. The driver who struck Mr. Hartsek carried automobile insurance with a bodily injury liability limit of $25,000. *Id.* ¶ 5. Mr. Hartsek received the full $25,000 from that policy. *Id.* ¶ 17. Additionally, State Farm paid Mr. Hartsek $50,000 in UIM benefits pursuant to the new policy, which remained in full force.[1] *Id.* ¶

---

[1] State Farm also paid Mr. Hartsek $350,000 in UIM benefits pursuant to two other automobile insurance policies Mr. Hartsek held. ECF No. 1-2 at 14. The payout from those policies is not at issue in this case.

11. State Farm determined that Mr. Hartsek was entitled to $50,000 in UIM benefits under the new policy because of the form he signed in July 2019 requesting UIM coverage limited at $50,000.[2] ECF No. 1-2 ¶ 40.

Mr. Hartsek, through counsel, advised State Farm that Mr. Hartsek never made a valid request for lower UIM coverage under the new policy and that, therefore, Mr. Hartsek was entitled to receive UIM coverage under the new policy in an amount equal to the new policy's bodily injury liability coverage limit, $500,000.  *Id.*  State Farm refused, reiterating that Mr. Hartsek had validly requested lower UIM coverage when he signed the underinsured coverage limits form in July 2019. *Id.* ¶¶ 40–43.

On September 11, 2024, Mr. Hartsek filed suit against State Farm in the Allegheny County Court of Common Pleas, asserting one count of breach of contract and one count of insurance bad faith.  ECF No. 1-2 at 6, 8.  State Farm timely removed the case to this Court.[3]  Mr. Hartsek and State Farm have filed cross Motions for Summary Judgment on the issue of whether Mr. Hartsek validly requested lower UIM coverage.  ECF Nos. 28, 30.  The Motions are fully briefed and ripe for resolution.  ECF Nos. 29, 31, 37, 38.

**II.     Legal Standard**

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Razak v. Uber Techs., Inc.*, 951

---

[2] The parties agree that, between the issuance of the new policy and the time of the accident in April 2022, Hartsek never requested an increase to the new policy's UIM coverage limit. *Id.* ¶ 22.
[3] State Farm properly removed pursuant to 28 U.S.C. § 1441.  This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C § 1331, as the parties are diverse and the amount in controversy exceeds $75,000.

F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted). Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. . . . to prevail on a motion for summary judgment, the non-moving

4

party must present more than a mere scintilla of evidence . . . ." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted). Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial[,]" Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffmann La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, No. 19-2184, 2020 WL 2404904, at *3 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

**III.    Discussion**

The parties agree that Pennsylvania law governs their dispute. *Assicurazioni Generali, S.P.A. v. Clover*, 195 F.3d 161, 164 (3d Cir. 1999) (holding when parties agree, either explicitly or implicitly, on the relevant law to apply, the district court in a diversity action shall apply that law). The parties further agree that the sole issue presented by the cross Motions is whether a written request for lower UIM benefits, signed by the named insured, is enforceable under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFR") and under Pennsylvania contract law despite bearing the incorrect policy number. ECF Nos. 29 at 1, 31 at 1. The parties do not dispute the material facts and agree that this is an issue of law for the Court to decide. Turning first to State Farm's Motion, and viewing the stipulated facts in the light most favorable

to Mr. Hartsek as the non-moving party, the Court finds that State Farm is entitled to summary judgment.

State Farm contends that "[a]ny writing signed by a named insured is sufficient as a matter of law to reduce the amount of UIM coverage" and that Mr. Hartsek thus validly requested lower UIM coverage for the new policy when he signed the underinsured coverage limits form. ECF No. 31 at 7. State Farm argues it has therefore already discharged all its obligations to Mr. Hartsek and is entitled to summary judgment. *Id.* at 13–14. Mr. Hartsek acknowledges that he signed the underinsured coverage limits form on July 11, 2019 and that he intended that form to apply to the new policy. SCSOMF ¶¶ 15–16; ECF No. 29 at 6. But Mr. Hartsek argues his intent is irrelevant. *Id*. at 7. Mr. Hartsek instead contends that the form he signed is "technically invalid" under Section 1734 of the MVFRL because it bears the number of the existing policy rather than the new policy. *Id*. at 5. Alternatively, Mr. Hartsek argues, the Court should conclude that the form is ambiguous and, under well-established principles of Pennsylvania contract law, resolve that ambiguity in his favor. *Id*. at 8–9. The Court will first consider whether the underinsured coverage limits form was a valid request for lower UIM coverage under Section 1734 of the MVFRL, and then consider whether the form was ambiguous.

### A.     Mr. Hartsek Validly Selected Lower UIM Coverage Limits under Section 1734

Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFR") obligates automobile insurance companies to offer both uninsured (UM) and underinsured (UIM) motorist benefits with every automobile insurance policy. *See* 75 Pa. Cons. Stat. § 1731; *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 150 (Pa. 2002). Section 1731 of the MVFR, which is not at issue in this case, allows motorists to decline the UM/UIM coverage insurers are obligated to offer. 75 Pa. Cons. Stat. § 1731. However, Section 1731 imposes strict requirements to effectuate a valid

rejection of UM/UIM coverage. Section 1731 sets forth one form for the rejection of UM coverage and another form for the rejection of UIM coverage. *Id.* To validly reject both UM and UIM insurance, the motorist must sign each rejection form on separate sheets of paper. *Id.* Further, Section 1731 provides that any rejection form "that does not specifically comply with [its requirements] is void[,]" *id.*, and Pennsylvania courts have held that even minute deviations from Section 1731's requirements render an attempted rejection of UM/UIM coverage invalid. *See, e.g.*, *Am. Int'l Ins. Co. v. Vaxmonsky*, 916 A.2d 1106, 1108 (Pa. Super. 2006) (form rejecting UM/UIM coverage invalid solely because it was missing the word "all").

Section 1734 of the MVFR, which is at issue here, requires the amount of UM/UIM coverage to equal the amount of bodily injury liability coverage, unless the named insured requests a lower amount of UM/UIM coverage in writing. 75 Pa. Cons. Stat. § 1734. But Section 1734 is more flexible than Section 1731. Specifically, unlike the forms required for an outright rejection of UM/UIM benefits under Section 1731, Section 1734 does not mandate the form motorists must use to request lower UM/UIM coverage amounts. *See* 75 Pa. Cons. Stat. § 1734 (requiring only that the request for lower UM/UIM coverage be made by the "named insured . . . in writing"). Accordingly, Pennsylvania courts have held that "a valid and enforceable written request under § 1734 must: (1) manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) be signed by the named insured; and (3) include an express designation of the amount of [UM/UIM] coverage requested." *Erie Ins. Exch. v. Larrimore*, 987 A.2d 732, 737 (Pa. 2009) (quoting *Hartford Ins. Company v. O'Mara*, 907 A.2d 589, 602–603 (Pa. Super. 2006) (*en banc*)).

State Farm contends that Mr. Hartsek's rigid interpretation of Section 1734 is contradicted by two Pennsylvania Supreme Court decisions that declined to impose additional requirements to

7

effectuate a valid request for lower UM/UIM coverage limits under Section 1734: *Lewis v. Erie Ins. Exch.*, 793 A.2d 143 (Pa. 2002) and *Orsag v. Farmers New Century Ins.*, 15 A.3d 896 (Pa. 2011). The Court agrees with State Farm.

In *Lewis*, plaintiffs signed a single form in which they requested both a lower UM coverage limit and a lower UIM coverage limit. A.2d at 144. After they were injured in an automobile collision, the *Lewis* plaintiffs sought UIM benefits equal to the bodily injury liability limit in their insurance policy, arguing that the form they signed selecting lower UM/UIM coverage was invalid under the MVFRL. *Id.* The *Lewis* plaintiffs specifically pointed to Section 1731's requirement that the form for rejection of UM be printed on a separate page from a form rejecting UIM coverage. *Id.* According to the *Lewis* plaintiffs, because the form they signed did not comply with the technical requirements of Section 1731, and because Section 1731 explicitly "void[s]" any form that does not comply with its requirements, the form they signed was void for *any* purpose, including for requesting lower UIM benefits under Section 1734. *Id.* at 148.

The Pennsylvania Supreme Court rejected the plaintiffs' invitation to "require actual execution of a [Section 1731] waiver/rejection form as an essential prerequisite to every Section 1734 specific-limits request." *Id.* at 152. The court instead held "that the technical and remedial prescriptions of Section 1731 . . . apply solely in circumstances in which an insurer attempts to enforce outright waiver/rejection of UM/UIM coverage." *Id.* at 155. The *Lewis* court thus ruled that the plaintiffs validly requested lower UM/UIM coverage under Section 1734.

The *Orsag* plaintiffs submitted a signed application for automobile insurance in which they requested $100,000 in bodily injury liability insurance coverage and $15,000 in UM/UIM coverage. 15 A.3d 897. Following a motor vehicle accident, the *Orsag* plaintiffs argued the signed application was an invalid request for lower UM/UIM coverage under Section 1734 because: (1)

8

the application did not explain the insurer's obligation to offer UM/UIM coverage at the same level of bodily injury liability coverage; and (2) while the application was signed, the plaintiffs did not sign or initial next to their specific coverage selections. *Id.* at 900. But, "[c]onsistent with . . . *Lewis*[,]" the *Orsag* court "reiterate[d] [that] the language of § 1734 is plain and unambiguous" and held that the plaintiffs validly requested lower UM/UIM coverage under Section 1734. *Id.* at 900–01.

In both *Lewis* and *Orsag*, the Pennsylvania Supreme Court affirmed that "all that is required to request lower limits of [UM/UIM] coverage is a writing requesting the same from a named insured." *Orsag*, 15 A.3d 896 at 900 (quoting *Lewis*, 793 A.2d at 153). Here, it is undisputed that Mr. Hartsek signed a form selecting "lower limit[s]" of $50,000 in UIM coverage for the policy he requested on July 11, 2019, "in lieu of the higher limits made available to" him. SCSOMF ¶ 16. Because the signed form manifested Mr. Hartsek's desire to purchase lower UIM coverage and includes an express designation of the amount of UIM coverage, the form complies with Section 1734's requirements.[4] The Pennsylvania Supreme Court's repeated refusal to impose additional requirements for a valid request for lower UM/UIM coverage compels this Court's conclusion that the reference to the existing policy number did not render the form noncompliant with Section 1734.

---

[4] Mr. Hartsek's reliance on an unpublished decision from the Pennsylvania Superior Court, *Bricker v. State Farm. Mut. Auto. Ins. Co.*, No. 102 MDA 2014, 2014 WL 10803085, *1 (Aug. 22, 2014), does not compel a different result. First, unlike Mr. Hartsek, the *Bricker* plaintiff disputed that she ever intended to reject UM/UIM coverage under the second policy. *Id*. at 1–3. The *Bricker* Court was also "unable to find anything in the record that explains why [the plaintiff] signed the forms" in question. *Id*. at *4. Finally, the Court notes that *Bricker* involved a rejection of UM/UIM coverage under Section 1731, not a request for lower UM/UIM coverage limits under Section 1734. *Bricker* thus fails to support Mr. Hartsek's argument.

9

**B.     The Form Mr. Hartsek Signed Selecting Lower UIM Coverage Limits Was Not Ambiguous**

State Farm argues that the underinsured coverage limits form Mr. Hartsek signed was unambiguously intended to apply to the new policy. ECF No. 31 at 10. Mr. Hartsek contends that the form's reference to the existing policy number renders the form ambiguous as to which policy it applied to. ECF No. 29 at 8–9. Mr. Hartsek notes that, under Pennsylvania law, any ambiguity in an insurance policy provision "is to be construed in favor of the policyholder and against the insurer[.]" *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (2020). Therefore, Mr. Hartsek argues, the Court must resolve that ambiguity in his favor and interpret the request for lower UM/UIM coverage as applying to the existing policy only. *Id.*

But the underinsured coverage limits form Mr. Hartsek signed clearly requested lower UM/UIM coverage limits for the new policy, not the existing policy. First, while the form lists the named insured as "Hartsek, John J DBA Hartsek Contracting[,]" the named insureds on the existing policy were John and Elsie Hartsek. *Id.* ¶¶ 10, 17. Second, Mr. Hartsek completed and signed the form the same day he requested the new policy. *Id.* ¶¶ 15–16. Third, the parties agree that the form listed the existing policy number solely because there was neither a policy number nor an application number associated with the new policy at the time Mr. Hartsek completed the form. *Id.* ¶¶ 29–30. Thus, "the existing policy number [was] the only reference point available[.]" *Id.* ¶ 30.

Finally, and most significantly, Mr. Hartsek acknowledges that he intended his request for lower UM/UIM coverage limits to apply to the new policy. ECF No. 29 at 6. Under Pennsylvania law, "[w]hen, at the time of formation, the parties attach the same meaning to a contract term and each party is aware of the other's intended meaning, or has reason to be so aware, the contract is enforceable in accordance with that meaning." *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d

261, 283 n.5 (2012). Mr. Hartsek points to no authority suggesting this principle does not apply with equal force in the context of an insurance contract. The Court therefore finds that, viewing the stipulated facts in the light most favorable to Mr. Hartsek as the non-moving party, the underinsured coverage limits form Mr. Hartsek signed unambiguously manifests his intent to request lower UM/UIM coverage limits for the new policy. The form is thus enforceable in accordance with that meaning.

### C. Mr. Hartsek's Motion for Summary Judgment Will be Denied

The Court will now turn to Mr. Hartsek's Cross-Motion for Summary Judgment. ECF No. 28. Mr. Hartsek moves for summary judgment on the same question of law as State Farm. Because the Court has found that State Farm is entitled to judgment as a matter of law, Mr. Hartsek's Motion must necessarily be denied.

### IV. Conclusion

For the foregoing reasons, the Court will GRANT State Farm's Motion, ECF No. 30, and DENY Mr. Hartsek's Motion, ECF No. 28.

DATED this 31st day of December, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record